UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL BAIN and JANET BAIN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 24-11690-MJJ<br>) |
| MCGRIFF INSURANCE SERVICES, LLC, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**MEMORANDUM OF DECISION**

March 25, 2025

JOUN, D.J.

Plaintiffs Samuel and Janet Bain (the "Bains" or "Plaintiffs"), property owners of a vacation home in Florida, commenced this action against Defendant McGriff Insurance Services, LLC ("McGriff Insurance" or "Defendant"), an insurance broker, for Breach of Contract, Negligence, Breach of Fiduciary Duty, and violations of M.G.L. c. 93A § 9 relating to insurance coverage of the Bains property. Now before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue; or in the alternative, to Transfer for Improper Venue or Forum Non Conveniens [Doc No. 10]. For the reasons below, Defendant's Motion is DENIED in part and GRANTED in part.

**I.     BACKGROUND**

The Bains are residents of the Commonwealth of Massachusetts who purchased a vacation home in Sanibel Island, Florida (the "Property"). [Doc. No. 1-1 at ¶¶ 1-2, 8-9]. After

acquiring the Property, the Bains's real estate agent connected them with McGriff Insurance. [*Id*. at ¶ 11]. McGriff Insurance is a company formed and existing under the laws of the State of New Jersey with its principal place of business in Raleigh, North Carolina. [*Id*. at ¶ 3]. McGriff Insurance is also registered to do business in Massachusetts and South Florida. [*Id.* at ¶ 4, 21]. The Bains engaged and contracted with McGriff Insurance, as their fiduciary and agent, to consult, counsel and advise the Bains on their insurance coverage for the Property. [*Id.* at ¶ 12]. Janet Bain informed McGriff Insurance that Plaintiffs lacked any experience or understanding with respect to ownership of residential property in Florida and any insurance issues as related to a Florida property, and that they would be relying exclusively on McGriff Insurance's professed expertise. [*Id.* at ¶ 13].

The Bains explained to McGriff Insurance that the Property was a vacation home, that the Bains resided in Massachusetts, and asked McGriff Insurance what type and level of insurance they recommended for the Property. [*Id.* at ¶¶ 14-15]. During this time, Plaintiffs also provided McGriff Insurance with their contact information, including the Florida address of the Property, their home address in Massachusetts, their email addresses, and telephone numbers. [*Id.* at ¶ 16].

Subsequently, McGriff Insurance, transmitted to the Bains, two proposals for insurance of the Property. [*Id.* at ¶ 18]. At that time, the Bains were in Massachusetts, and McGriff Insurance was aware the Bains were in Massachusetts. [*Id.*]. The Bains thereafter discussed via telephone with McGriff Insurance and its authorized agent each insurance coverage proposal McGriff Insurance provided. [*Id.* at ¶ 19]. Again, this telephone conversation occurred while Plaintiffs were in Massachusetts and McGriff Insurance was aware Plaintiffs were in Massachusetts. [*Id.*]. McGriff Insurance ultimately recommended that Plaintiffs select an insurance policy underwritten by Orchid Underwriters Agency, LLC ("Orchid"). [*Id.* at ¶ 22].

Orchid was the managing general underwriter on behalf of Underwriters at Lloyd's of London ("Lloyd's"), the insurance company ultimately proposing to issue a policy to cover the Property. [*Id.*]. McGriff Insurance explained to the Bains that the proposed policy from Lloyd's covering the property from May 17, 2021, to May 17, 2022, ("Lloyd's Policy"), provided all the necessary and appropriate casualty coverage at a much lower premium rate than the alternative proposal. [*Id.* at ¶ 23]. On June 3, 2021, the Bains paid the premium bill of $4,922.30 in full for Lloyd's Policy, thus securing coverage until May 17, 2022. [*Id.* at ¶¶ 28-29]. The Plaintiffs believed that McGriff Insurance would ensure they received all notices pertaining to the Property, and at no time did McGriff Insurance ever inform the Bains that they would only receive notices regarding the insurance protecting the Property via mail delivered to the Property. [*Id.* at ¶ 30].

On September 28, 2022, Hurricane Ian made landfall in Florida on Sanibel Island, causing several hundred thousand dollars of damage to the Property. [*Id.* at ¶ 31-32]. The Bains contacted McGriff Insurance on October 10, 2022, who informed them that the Property was not insured. [*Id.* at ¶ 33]. The Plaintiffs had no knowledge prior to this date that the Property was uninsured. [*Id.* at ¶ 34]. McGriff Insurance informed them that two notices related to the renewal of Lloyd's Policy were sent to the Property in May 2022 and July 2022. [*Id.* at ¶ 35]. Plaintiffs never received any notices. [*Id.* at ¶ 35-36].

Plaintiffs only found out from McGriff Insurance that the Lloyd's Policy was no longer in effect after placing three telephone calls to McGriff Insurance and finally receiving a return call from McGriff Insurance's authorized agent. [*Id.* at ¶ 38]. The authorized agent informed the Bains that there was no insurance coverage protecting the Property, that she was leaving on vacation, and that the Bains had been assigned to a different McGriff Insurance agent. [*Id.*]. The

Bains made multiple phone calls to the new McGriff Insurance agent who never returned their calls. [*Id.* at ¶ 40]. On or about October 24, 2022, Plaintiffs spoke with a McGriff Insurance supervisor, who informed the Plaintiffs that "McGriff is not responsible for anything further" and that there was nothing more McGriff Insurance could do. [*Id.* at ¶ 41]. Subsequent to their last communication with McGriff Insurance, Plaintiffs learned that Orchid had delivered a proposal for the renewal of the Lloyd's Policy to McGriff Insurance on or about March 27, 2022, and a notice that Lloyd's Policy had expired on May 18, 2022. [*Id.* at ¶ 43-44]. McGriff Insurance did not inform the Bains that they received either notification. [*Id.*].

## II.   PROCEDURAL HISTORY

Plaintiffs filed a Complaint on May 15, 2024, in Norfolk Superior Court alleging Breach of Contract (Count I), Professional Negligence (Count II), Breach of Fiduciary Duty (Count III), and a Violation of M.G.L. c. 93A § 9 (Count IV). [Doc. No. 1]. On June 28, 2024, McGriff filed a Notice of Removal. [*Id.*]. On August 14, 2024, McGriff file a Motion to Dismiss for Lack of Personal Jurisdiction And Improper Venue; Or In The Alternative To Transfer For Improper Venue Or Forum Non Conveniens. [Doc. No. 10].

## III.   LEGAL STANDARD

In evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (under the prima facie standard), the Court considers "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). The Court draws the facts from the plaintiffs' pleadings and supplemental filings, *see Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 52 (1st Cir. 2020), taking them as true, even if disputed by the defendant, *see*

4

*Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2001). The Court may consider the defendant's proffered facts "only to the extent that they are uncontradicted." *Adelson*, 510 F.3d at 48.

## IV. JURISDICTION

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). "The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

Here, Plaintiffs allege contract and tort claims, as well as a claim under M.G.L. c. 93A which is derivative of the foregoing claims. Specifically, Plaintiffs allege that Defendant breached its contract for failing to receive all notices related to the insurance coverage concerning the property. Additionally, Plaintiffs allege that Defendant did not provide the requisite duty of care by failing to keep Plaintiffs aware of all correspondence related to the insurance policy, including renewal. "Ordinarily, the personal jurisdiction analysis for tort claims differs from that for contract claims." *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 10 (1st Cir. 2002). However, here "the two claims are sufficiently connected that the difference is of no concern." *See Phillips v. Prairie Eye Ctr.*, 530 F.3d 22 (1st Cir. 2008). "Thus, here, we look to whether the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." *Id.* at 27 (cleaned up).

### A. Due Process Clause

"The inquiry into specific jurisdiction[1] lends itself to a tripartite analysis." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999).

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction.

*Id.*

### 1. Relatedness

"[T]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Id.* at 290 (cleaned up). In the present case, the alleged contract involves an insurance policy, which was entered into after a telephone conversation between the parties while Plaintiffs were in Massachusetts and after insurance proposals were sent to Plaintiffs in Massachusetts. Plaintiffs' claims of breach arise from McGriff Insurance's failure to provide notice to Plaintiffs in Massachusetts that the policy had expired, demonstrating a nexus between the contacts and the claims. *See Connell Ltd. P'ship v. Associated Indem. Corp.*, 651 F. Supp. 3d 293, 306 (D. Mass. 2023) (a plaintiff's statutory

---

[1] McGriff Insurance argues the Court lacks general jurisdiction, while Plaintiffs assert that McGriff Insurance is registered and licensed to do business in Massachusetts, making it subject to general jurisdiction. Here, Defendant is not incorporated and does not maintain a principal place of business in Massachusetts. "Accordingly, the court finds that general jurisdiction does not exist." *Connell Ltd. P'ship v. Associated Indem. Corp.*, 651 F. Supp. 3d 293, 302 (D. Mass. 2023) (finding lack of general jurisdiction where defendants were neither incorporated nor maintained a place of business in Massachusetts).

claim was sufficiently related to defendants' contact with Massachusetts where defendants' agent sent letters representing limits to insurance policies).

### 2. **Purposeful Availment**

To determine purposeful availment, a court looks to whether a defendant "deliberately target[ed] its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011). The main elements of purposeful availment are voluntariness and foreseeability. *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 5 (1st Cir. 2016). "The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996). In addition, foreseeability requires "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Defendant argues that it did not initiate any business transaction in Massachusetts; instead, Plaintiffs solicited Defendant seeking assistance in obtaining proposals for Florida insurance policies for Florida property. Although the Bains may have initially connected with McGriff Insurance in Florida, subsequently, McGriff Insurance directed their actions in Massachusetts by transmitting two proposals to the Plaintiffs while they were in Massachusetts. This is not a case of "generalized reference to inter-state contacts 'via telephone communications' and 'via 'U.S. mail.'" *Nicholas v. Buchanan*, 806 F.2d 305, 307 (1st Cir. 1986). Nor is this a case where an interstate contract stands alone. *Burger King Corp.*, 471 U.S. 462, 478 (1985). Here, upon transmission of the two insurance proposals, McGriff Insurance

7

discussed and advised Plaintiffs via telephone of recommended policies, while Plaintiffs were in Massachusetts. Ultimately, Plaintiffs chose Defendant's proposed insurance and paid a premium bill, securing coverage for a year. Significantly, McGriff Insurance is registered to do business in Massachusetts and Defendant does not refute it sells and issues insurance policies in Massachusetts, only that it does not do so regularly. Taken together, the interstate contract, phone conversation regarding potential proposals, discussion on the length, price, and benefits of the proposed insurance, and "Defendants' presence in the Massachusetts insurance market …point[s] to [McGriff Insurance's] voluntary actions making foreseeable that Massachusetts courts would have jurisdiction over them as to a statutory claim relating to the provision of insurance to Massachusetts residents*." Connell Ltd. P'ship.*, 651 F. Supp. 3d at 306.

### 3. Reasonableness

Finally, the Due Process Clause requires that it be reasonable to exercise jurisdiction in the forum state. *Howard Phillips Fund*, 196 F.3d at 288.

> Out of this [reasonableness] requirement, courts have developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal. These "gestalt factors" are as follows:
>
> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 717 (1st Cir. 1996) (cleaned up). The gestalt factors are "a means of assisting courts in achieving substantial justice." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994).

Regarding the first *Gestalt* factor, McGriff Insurance "alleges nothing special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from

its place of business." *Nowak*, 94 F.3d at 718. Additionally, nothing in the record supports that Plaintiffs brought the present suit to harass McGriff Insurance. As such, "the burden of appearance in Massachusetts might weigh in [Defendant's] favor; however, the record does not so indicate." *Id.*

Regarding the second *Gestalt* factor, "…a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders…" *Id.* Plaintiffs allege that Defendant failed to provide notice in Massachusetts, constituting breach. Since the alleged injury occurred in the forum state, Massachusetts has an interest in exercising jurisdiction.

As to the third *Gestalt* factor, Massachusetts, where Plaintiffs mainly reside, and where they have sued, is likely more convenient for the Bains. Finally, as to the fourth and fifth *Gestalt* factors, the administration of justice and interests of the affected governments in substantive social policies, the record does not appear to weigh one side over the other.

Accordingly, under the tripartite analysis, the Court finds jurisdiction under the Due Process Clause.

### B. Massachusetts Long-Arm Statute

McGriff Insurance argues that M.G.L. c. 223A, § 3(a) of the Massachusetts long-arm statute ("Section 3(a)") does not apply because McGriff Insurance does not regularly transact business in Massachusetts or contract to supply any product in Massachusetts. The Bains disagree, arguing McGriff Insurance exchanged multiple communications with Plaintiffs, by phone, email, and mail to obtain Plaintiffs' business, and while Plaintiffs were located in Massachusetts and with knowledge that Plaintiffs were in Massachusetts.

Section 3(a) "gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in the Commonwealth, and the alleged cause of action arose from such transaction of business." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979). The reference to 'transacting any business' is "general and applies to any purposeful acts by an individual, whether personal, private, or commercial." *Ross v. Ross*, 371 Mass. 439, 441 (1976). Here, the causes of action arise from an insurance policy after a telephone call and two insurance proposals were transmitted by McGriff Insurance to Plaintiffs while they were in Massachusetts. Thus, the "transacting any business" requirement of § 3(a) has been met. *See Hahn v. Vermont L. Sch.*, 698 F.2d 48, 51 (1st Cir. 1983) ("The purposeful actions of [Vermont Law School] in mailing to [a Massachusetts resident] in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long-arm statute."); *see also Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 983 (1st Cir. 1986). Accordingly, the Court finds jurisdiction under the Massachusetts long-arm statute.

**V.    VENUE**

"When presented with a motion to transfer, the trial court undertakes an "individualized, case-by-case consideration of convenience and fairness…" *First State Ins. Co. v. XTRA Corp.*, 583 F. Supp. 3d 313, 318 (D. Mass. 2022). In so doing, the court considers: "(1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake." *Id.*

Here, the first factor— the plaintiff's choice of forum—weighs in favor of Plaintiffs. Plaintiffs bring this case within their home state and have stated their choice of venue as

Massachusetts. The second factor—the relative convenience of the parties—is neutral where the parties have shown that transfer "would merely shift inconvenience from one party to the other" *Id.* at 319. The third factor— convenience of the witnesses and location of documents—weigh in favor of Defendant. Defendant rightly argue that witnesses are based in Florida, the Property is in Florida, and Plaintiffs' expert is likely to reside in Florida. Although Plaintiffs argue McGriff emailed, telephoned, and/or mailed information to them in Massachusetts, "…most records and documents now can be transported easily or exist in miniaturized or electronic form ... their location is entitled to little weight." *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 276 (D. Mass. 2006).

The fourth and sixth factor—any connection between the forum and the issues and the state or public interests at stake—weigh heavily in favor of the Defendant. Although the alleged injury occurred to Plaintiffs in Massachusetts, the policy was issued from Florida and relates to the Property located in Florida. Furthermore, the issues involve alleged conduct that took place in Florida by Defendants and its agents based in Florida. Finally, the fifth factor—the law to be applied—is a neutral factor. Like in *Connell Ltd. P'ship*, this case involves 'basic or well-established, as opposed to complex or unsettled' issues of state law." 651 F. Supp. 3d at 310.

Thus, the convenience of the witnesses, the connection between the forum and the issues, and the state or public interests at stake overcome the presumption in favor of the Bains' chosen forum. The Court grants Defendant's alternative request for a transfer of venue to the Middle District of Florida.

## VI.  CONCLUSION

For the above reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Venue Transfer is <u>GRANTED</u> in part and <u>DENIED</u> in part. The Court <u>TRANSFERS</u> this matter to the United States District Court of the Middle District of Florida, Tampa Division.

SO ORDERED.

<u>/s/ Myong J. Joun</u>
United States District Judge
